UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

JUDY J. SCHMELZINGER, as Executrix )
of the Estate of Robert J. Closs, )
                                                             )
         Plaintiff, )
                                                             )
             v. )   Case No. 1:22-cv-186
                                                             )
CITY OF BUFFALO, *et al.*, )
                                                             )
         Defendants. )

**OPINION AND ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT**
(Doc. 28)

      Plaintiff Judy J. Schmelzinger ("Plaintiff"), as Executrix of the Estate of Robert J. Closs (the "Decedent"), brings this action against Defendants the City of Buffalo; the Buffalo Police Department; and Buffalo Police Officer Clayton P. Reed, Buffalo Police Officer Michael Healy, Buffalo Police Officer Caitlin Hidinger, Buffalo Police Officer Michael Ross, Buffalo Police Officer Ellen Taylor, Buffalo Police Officer Judith Bigelow, Buffalo Police Lieutenant Michael Long, Buffalo Police Lieutenant Patrick Morrow, and Buffalo Police Captain Robert Lee (the "Police Defendants") (collectively, "Defendants").

      Plaintiff asserts four causes of action: use of excessive force in violation of 42 U.S.C. § 1983 against the Police Defendants in their individual capacities (Count 1); negligence in violation of New York law against the Police Defendants in their individual capacities (Count 2); assault in violation of New York law against the Police Defendants in their individual capacities (Count 3); and use of "excessive force in [violation] of 42 U.S.C. § 1982" against the City of Buffalo and the Buffalo Police Department (Count 4). (Doc. 1-1 at 7) (emphasis and capitalization omitted). Plaintiff seeks $1,000,000 in actual damages, $3,000,000 in punitive damages, and attorney's fees and costs.

Pending before the court is Defendants' August 31, 2023 motion to dismiss Plaintiff's Complaint and for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. (Doc. 28.) Plaintiff has not filed an opposition, and the deadline to do so has expired.

Plaintiff is represented by Joshua I. Ramos, Esq. Defendants are represented by David M. Lee, Esq.

## I. The Allegations of the Complaint.

In the Complaint, Plaintiff alleges that the nine Police Defendants forcibly removed the Decedent, a seventy-eight-year-old who was "well known to the Buffalo Police Department and its employees/agents as a citizen of the City of Buffalo with mental health problems[,]" from a vehicle and "merciless[ly] beat" him. (Doc. 1-1 at 2-3, ¶¶ 10, 16) (capitalization omitted). The Decedent allegedly died approximately three weeks later from blunt force trauma caused by the incident. Plaintiff further claims that although "[t]here were no allegations of weapons being involved[,]" the Police Defendants "intentionally hit and struck" the Decedent while they "attempted to subdue" him, although "they did not intend to cause [his] death." *Id.* at 5, ¶ 27; *id.* at 7, ¶¶ 36, 38.

## II. The Undisputed Facts.

Shortly before 6:30 p.m. on March 6, 2019, the Decedent, without a valid driver's license, stole a Buffalo Police vehicle. Officers Reed and Healy pursued the Decedent in their police cruiser. The Decedent ran a red light while driving at a fast speed and collided with another vehicle that had the right-of-way. He crashed into a parked car in a parking lot and reversed into the police cruiser pursuing him before coming to a stop. The driver's side airbag deployed during the incident.

Officers Reed and Healy exited their patrol vehicle, approached the driver's side of the stolen police vehicle, and issued verbal commands to the Decedent to exit the vehicle. The Decedent refused to comply, struggled with the officers as they attempted to remove him from the vehicle, and refused to take his hands off the steering wheel and the gear shifter. Officers Reed and Healy then forcibly removed the Decedent from the vehicle. Because the Decedent continued to struggle, Officers Reed and Healy forcibly

2

handcuffed him. No other Buffalo Police Department officers were involved in the use of force against the Decedent.

After the Decedent was subdued, he was taken to the Erie County Medical Center. On March 30, 2019, he died at Buffalo General Medical Center from complications of blunt force injuries to his torso. The Erie Country Medical Examiner's Office's Fatality Certification lists the manner of the Decedent's death as "accident" and describes the source of his injuries as a "[m]otor vehicle collision[.]" (Doc. 28-3 at 2) (capitalization omitted).

Plaintiff does not have an expert medical opinion that the Decedent's injuries or death were caused by the Police Defendants' use of force. In a state court proceeding, Plaintiff sought leave to serve a late notice of claim upon the City of Buffalo. On December 3, 2020, the court denied Plaintiff's motion and observed:

> The Petition does not set forth when [Plaintiff] was appointed administratrix, so the court is unable to analyze the time frame from appointment to filing of the instant Petition. However, a letter dated January 28, 2020 advised [the City of Buffalo and the Buffalo Police Department] that it would be filing a motion for late notice. However, the instant Petition was not filed until October 02, 2020.
>
> The record indicates that [D]ecedent struck several vehicles and other property before the alleged physical interaction occurred with [the Police Defendants]. The court finds that [the City of Buffalo and the Buffalo Police Department] would be prejudiced by late filing since it may not have been able to investigate properly and adequately for a determination as to whether the alleged injuries were the result of the multiple motor vehicle accidents that occurred when he was operating the stolen vehicle or the police interaction thereafter.

(Doc. 28-4 at 2.) On March 7, 2022, Plaintiff commenced the current action.

### III. Conclusions of Law and Analysis.

#### A. Applicable Standards of Review.

In their motion, Defendants seek dismissal of Plaintiff's Complaint for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and for summary judgment under Rule 56. To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true,

3

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.* (internal quotation marks and citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

The court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the non-moving party" and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (internal quotation marks omitted). There is no genuine dispute where

4

"the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party must come forth with evidence sufficient to allow a reasonable jury to find in its favor." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (alteration adopted) (internal quotation marks omitted). "Thus, a nonmoving party can defeat a summary judgment motion only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in its favor, to establish the existence of an element at trial." *Id.* at 166-67 (alterations adopted) (internal quotation marks omitted).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted).

"A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita*, 475 U.S. at 586). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). However, if the evidence "presents a sufficient disagreement to require submission to a jury[,]" the court should deny summary judgment. *Id.* at 251-52. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Kaytor*, 609 F.3d at 545 (internal quotation marks and emphasis

omitted).

### B. Whether Plaintiff's State Law Claims for Assault, Negligence, Personal Injury, and Wrongful Death are Time-Barred.

Defendants argue Counts 2 and 3 must be dismissed because Plaintiff has not complied with N.Y. Gen. Mun. L. § 50-e and, as a result, these claims are time-barred. Under N.Y. Gen. Mun. L. § 50-e(1)(a):

> In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation . . . or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises; except that in wrongful death actions, the ninety days shall run from the appointment of a representative of the decedent's estate.

N.Y. Gen. Mun. L. § 50-e(1)(a). The notice of claim must set forth "the nature of the claim[,] . . . the time when, the place where and the manner in which the claim arose[,] and . . . the items of damage or injuries[.]" *Id.* at § 50-e(2). "Upon application, [a] court, in its discretion, may extend the time to serve a notice of claim specified in paragraph (a) of subdivision one of this section[.]" *Id.* at § 50-e(5). "Notice of claim requirements are construed strictly by New York state courts and failure to comply with them ordinarily requires dismissal." *Mayes v. City of Yonkers*, 2023 WL 8528641, at *4 (S.D.N.Y. Dec. 8, 2023) (quoting *Hardy v. N.Y.C. Health & Hosp. Ctr.*, 164 F.3d 789, 793 (2d Cir. 1999)) (internal quotation marks and brackets omitted).

"As a general rule, state notice-of-claim statutes apply to state-law claims asserted as pendant claims in a federal action." *MacIntyre v. Moore*, 335 F. Supp. 3d 402, 411 (W.D.N.Y. 2018) (citation and internal quotation marks omitted). "[T]o the extent [the plaintiff] argues that, because he filed suit in federal court, his state law claims are not subject to dismissal for failure to comply with New York State's notice-of-claim requirement, N.Y. Gen. Mun. Law § 50-e, he is mistaken." *Santiago v. City of New York*, 697 F. App'x 36, 38 (2d Cir. 2017) (citing *Hardy*, 164 F.3d at 793). Accordingly, "[w]hile New York's notice of claim requirements are not applicable to section 1983 claims brought in federal court[], the requirements do apply to state law personal injury

6

claims that are brought in federal court as related to section 1983 cases." *In re Dayton*, 786 F. Supp. 2d 809, 823 (S.D.N.Y. 2011) (internal quotation marks omitted) (second alteration in original).

It is undisputed that Plaintiff failed to timely serve notice of her state law claims, and her state court motion for an extension of time to file was denied. Even if she had properly served a notice of claim, she failed to commence her lawsuit within the timeframe required by § 50-e(1)(a). The court thus GRANTS Defendants' motion to dismiss Plaintiff's state law claims in Counts 2 and 3 because they are time-barred.

**C.     Whether the Statute of Limitations Bars Plaintiff's § 1983 Claim.**

Defendants next argue that Plaintiff's § 1983 excessive force claim against the Police Defendants must be dismissed because it is also barred by the statute of limitations. Because § 1983 does not contain a statute of limitations, "courts must borrow a state statute of limitations." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 107 (2d Cir. 2023); *see also Horn v. Politopoulos*, 628 F. App'x 33, 34 (2d Cir. 2015) ("In § 1983 actions, state statutes of limitations for personal injury actions and state tolling rules generally govern the time a party has to bring her action."). "In section 1983 actions [in New York], the applicable limitations period is . . . three years." *Zapata v. City of New York*, 502 F.3d 192, 194 n.3 (2d Cir. 2007) (internal quotation marks omitted) (second alteration in original); *see also* N.Y. C.P.L.R. § 214 (stating "an action to recover damages for a personal injury" must be "commenced within three years").

"The statute of limitations is an affirmative defense, and on a motion to dismiss pursuant to such defense, the defendant has the burden of demonstrating, based on the allegations in the complaint, that the claim is untimely." *Egan v. Kennedy*, 2008 WL 4647740, at *3 (W.D.N.Y. Oct. 17, 2008).

> When a defendant attempts to use the statute of limitations as an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued. If the defendant meets this burden, then the plaintiff has the burden to show that the limitations period should be tolled. A motion to dismiss on the basis that a claim is time-barred may only be granted when the allegations

7

> of the complaint make clear that the claim is barred by the limitations period.

*Omollo v. Citibank, N.A.*, 2008 WL 1966721, at *3 (S.D.N.Y. May 6, 2008) (footnotes and internal quotation marks omitted). "A claim accrues under federal law when the plaintiff knows, or has reason to know, of the injury on which the claim is based." *Horn*, 628 F. App'x at 34. "[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Id.* (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

In her Complaint, Plaintiff alleges the Decedent sustained injuries allegedly caused by the Police Defendants' conduct on March 6, 2019. Plaintiff thus knew of the injury allegedly giving rise to her claim on that date. On March 7, 2022, Plaintiff filed the Complaint. Because more than three years had elapsed from the date the claim accrued and the date Plaintiff filed the Complaint, Defendants have met their initial burden of demonstrating that the limitations period has expired. *See Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 81 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 82 (2019) (affirming dismissal of claim as time-barred because it was filed one day after the limitations period expired). Plaintiff has not responded to Defendants' motion and has therefore failed to satisfy her burden to show that the limitations period should be tolled. *See Toolan v. Bd. of Educ. of City of New York*, 2003 WL 22015437, at *2 (S.D.N.Y. Aug. 25, 2003) (dismissing plaintiff's *pro se* complaint where, "[a]lthough she was only one day late, she was still late, and no basis [was] presented for application of the doctrine of equitable tolling") The court thus GRANTS Defendants' motion to dismiss Count 1.

### D. Whether Plaintiff Fails to State a Claim for Wrongful Death.

As an alternative basis for dismissal of Plaintiff's wrongful death state law claim, Defendants assert that, under New York law, a plaintiff must allege "(1) the death of a human being; (2) a wrongful act, neglect[,] or default of the defendant that caused the decedent's death; (3) the survival of distributees who suffered pecuniary loss by reason of the decedent's death; and (4) the appointment of a personal representative of the

decedent." *Matthias v. United States*, 475 F. Supp. 3d 125, 143 (E.D.N.Y. 2020) (internal quotation marks omitted).

In her Complaint, Plaintiff plausibly alleges the death of the Decedent. Plaintiff fails to allege, however, that there are surviving distributees or that any surviving distributees have suffered pecuniary damages as a result of the Decedent's death. *See id.* (noting "[p]laintiff fails to allege 'pecuniary damages' caused by the death of her infant son"). Because Plaintiff has not plausibly alleged two of the essential elements of her wrongful death claim, dismissal is appropriate on this basis as well.

### E.  Whether Plaintiff's Municipal Liability Claim under § 1982 Fails to State a Claim.

Plaintiff asserts a municipal liability claim in Count 4 pursuant to 42 U.S.C. § 1982. Defendants argue dismissal of this claim is appropriate for failure to allege racial discrimination related to property rights.

Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. "While § 1982 does not use the phrase 'discrimination based on race,' that is its plain meaning." *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008). Because "Plaintiff fails to allege that Defendant[s'] actions were motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus[,]'" Defendants are entitled to judgment as a matter of law on her § 1982 claim. *Johnson v. City of New York*, 2018 WL 1175139, at *3 (E.D.N.Y. Mar. 5, 2018) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)).

Defendants further argue that, to the extent Plaintiff alleges a claim for municipal liability in Count 4, the Complaint fails to plausibly state a claim for relief under *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978). A municipality can be liable under § 1983 "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "A plaintiff may satisfy the 'policy, custom or

9

practice' requirement [of a *Monell* claim] in one of four ways[,]" *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276 (S.D.N.Y. 2010), by alleging:

> (1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees[.]

*Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019) (citations and internal quotation marks omitted) (alterations adopted). "[A] plaintiff also must establish an 'affirmative' causal link between the municipality's policy, custom, or practice and the alleged constitutional injury." *Dumel v. Westchester Cnty.*, 2021 WL 738365, at *5 (S.D.N.Y. Feb. 25, 2021).

To plead a *Monell* claim based on a failure to train or supervise, a plaintiff must plead (1) that "a policymaker knows 'to a moral certainty' that her employees will confront a given situation[,]" (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation[,]" and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). As the Supreme Court has observed:

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train [or supervise]. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Without notice that a course of training [or supervision] is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citations omitted).

"Merely alleging that Defendants failed to institute adequate procedures is not enough to survive dismissal. Such a failure must first rise to the level of deliberate

10

indifference to be actionable." *Hardy v. Erie Cnty.*, 2012 WL 1835624, at *3 (W.D.N.Y. May 18, 2012). With regard to a failure to train or supervise claim, "when [municipal] policymakers are on actual or constructive notice that a particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights, the [municipality] may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61 (citations omitted). Correspondingly, a failure to train or supervise evinces a municipal custom or policy only where decision-makers adopt an "approach that they know or should know has failed to prevent tortious conduct by employees[.]" *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997).

A single instance of allegedly unconstitutional conduct is generally insufficient to impose *Monell* liability. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) ("To infer the existence of a [County] policy from the isolated misconduct of a single, low-level officer, and then to hold the [County] liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.") (J. Brennan, concurring); *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (affirming a dismissal of a plaintiff's *Monell* claim for deliberate indifference to serious medical needs because "the amended complaint provides only one additional example of a similar incident"); *Jones*, 691 F.3d at 85 (finding that the plaintiff showed "two . . . or at the most three" cases of unconstitutional conduct by a "small number of officers" that occurred "over a period of several years[,]" which "fell far short of showing a policy, custom, or usage of officers" or conduct "so persistent that it must have been known to supervisory authorities").

In her Complaint, Plaintiff alleges, "[u]pon information and belief," that the City of Buffalo and the Buffalo Police Department have "a policy and/or custom in place that enabled its agents and employees to act with deliberate indifference to the constitutional rights of individuals; to wit, tolerating misconduct by its police officers, and encouraging misconduct by failing to adequately supervise, discipline or train." (Doc. 1-1 at 5, ¶ 23); *see also id.* at 7, ¶ 41 (alleging the City of Buffalo's and the Buffalo Police Department's

"policy or custom enabled its agents and employees to act with deliberate indifference to [the D]ecedent's constitutional rights"). This allegation is unsupported by facts, vague and generalized, and does not allege an affirmative causal link between that policy, custom, or practice and the alleged constitutional injury.

Because Plaintiff fails to plausibly allege a *Monell* claim against Defendants, Defendants' motion for summary judgment on Plaintiff's *Monell* claim is GRANTED and Count 4 is DISMISSED.

### F. Whether Plaintiff Fails to Allege Personal Involvement.

As an additional basis for dismissal, Defendants argue that they are entitled to judgment as a matter of law on Count 4 because Plaintiff fails to allege the personal involvement of any individual officer and instead relies on impermissible "group pleading." (Doc. 28 at 12) (internal quotation marks omitted). The court agrees.

In order to allege a violation under § 1983, a plaintiff must plausibly allege a defendant's personal involvement in the constitutional violation. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) (holding "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983"). In her Complaint, Plaintiff's allegations regarding the personal involvement of Defendants are conclusory and reflect impermissible "group pleading" because she has not alleged the personal involvement of any particular defendant. *Gonzalez v. Yepes*, 2019 WL 2603533, at *7 (D. Conn. June 25, 2019) ("As a corollary of the personal involvement requirement, complaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'") (quoting *Adamou v. Cnty. of Spotsylvania, Va.*, 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016)); *Wright v. Orleans Cnty.*, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015), report & recommendation adopted, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015) (finding that in the context of the personal involvement requirement under § 1983, "[p]leadings that fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim").

Because Plaintiff has not plausibly alleged the personal involvement of any of the individual Defendants, their motion for summary judgment on Count 4 is GRANTED on that basis as well.

### G. Whether Officers Reed and Healy are Entitled to Qualified Immunity.

Defendants' final argument in support of their motion for summary judgment is that Officers Reed and Healy are entitled to qualified immunity from Plaintiff's excessive force claim. The doctrine of "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[C]ourts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Although on summary judgment the "facts are viewed in the light most favorable" to the nonmoving party, when a "case concerns the defense of qualified immunity, . . . the [c]ourt considers only the facts that were knowable to the defendant officers." *White v. Pauly*, 580 U.S. 73, 76-77 (2017) (citations omitted).

"Whether the force used to effect an arrest is 'reasonable' or 'excessive' turns on 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.'" *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Among other things, the court must consider "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline[.]" *Id.* (internal quotation marks omitted). "The subjective motivations of the individual officers have no bearing on whether a particular seizure is unreasonable under the Fourth Amendment." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (internal quotation marks and alterations omitted). The court must make "allowance[s] for the fact that police officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. "'Not every push or shove'" is excessive, *id.* at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)), and "*de minimis* uses of force generally do not suffice to state a constitutional claim[.]" *Griffin v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999).

In this case, there is no dispute that Officers Reed and Healy pursued the Decedent as he drove a stolen police vehicle at high rates of speed and committed an array of traffic violations. *See Plumhoff v. Rickard*, 572 U.S. 765, 781 (2014) (holding "the Fourth Amendment did not prohibit [the police officers] from using the deadly force that they employed to terminate the dangerous car chase that [the decedent] precipitated. In the alternative, . . . [the police officers] are entitled to qualified immunity for the conduct at issue because they violated no clearly established law"). Nor is there any dispute that the Decedent collided with another vehicle that had the right-of-way in an intersection, hit a parked car in a parking lot, and backed the vehicle he was driving into the police cruiser before finally coming to a stop. After he refused to comply with verbal commands to exit the vehicle, the officers do not dispute that they forcibly removed Decedent from the vehicle and forcibly handcuffed him. Plaintiff has not provided an expert medical opinion that contradicts the medical examiner's conclusion that the Decedent died from injuries which occurred during the motor vehicle collisions.

Because Plaintiff has proffered no evidence of the use of excessive force, she has failed to establish a violation of the Decedent's constitutional rights. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). Qualified immunity thus shields Officers Reed and Healy from not only liability but litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.") (emphasis in original). The court GRANTS Defendants' motion for summary judgment on Plaintiff's excessive force claim.

## LEAVE TO AMEND

Although leave to amend must be freely granted, Fed. R. Civ. P. 15, the court may deny leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In light of Plaintiff's failure to respond to Defendants' motion to dismiss and for summary judgment, the court does not grant leave to amend *sua sponte*. Plaintiff may nonetheless petition the court for leave to file an Amended Complaint within twenty (20) days of the date of this Opinion and Order pursuant to Fed. R. Civ. P. 15. In the event she fails to do so, judgment shall be entered in Defendants' favor and this case will be DISMISSED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and for summary judgment is GRANTED. (Doc. 28.)

SO ORDERED.

Dated this 8th day of March, 2024.

Christina Reiss, District Judge
United States District Court